No. 22,665.

GRACE L. SNYDER, *Appellee*, v. THE FARMERS ALLIANCE INSURANCE COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

INSURANCE—*Fire Loss after Expiration of Policy—No Renewal—No Liability—Agency*. Where a fire insurance company had been accustomed to renew annual insurance on plaintiff's household goods on applications signed for her by the company's local agent, who was also an obliging friend of the insured, the insurance company is not liable for a fire loss on such goods where the local agent, through ill health, failed to make such application for reinsurance, although he did make a futile effort to procure insurance on the goods through the local agent of another insurance company and although the owner's check was turned over to the latter for that purpose, when it is shown that such latter agent communicated the facts to the owner about the time the insurance expired and where plaintiff was aware that she had no

31—107 Kan.

insurance on her goods for over a day and a half before they were burned, and made no effort to procure insurance.

Appeal from Mitchell district court; CHARLES L. KAGEY, judge *pro tem.* Opinion filed October 9, 1920. Reversed.

*S. H. Allen, Otis S. Allen,* and *George S. Allen,* all of Topeka, for the appellant.

*Frank A. Lutz, A. E. Jordan,* both of Beloit, and *C. M. Higley,* of Cawker City, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This action was for $800 as insurance for the loss of household goods destroyed by fire in Cawker City. Plaintiff held no policy of insurance issued by defendant, but based her action' on the ground that the defendant should have protected her property by insurance because of prior and long continued custom of business dealings which had existed between the parties, and because of the circumstances involved.

The insurance on plaintiff's goods had been carried by the defendant for many years. From time to time, as succeeding policies matured, the defendant's agent, who was a neighbor and friend of the plaintiff and her husband, attended to their renewal. This agent, Peter Gengler, usually filled out plaintiff's application for insurance, signed her name or her husband's, and when he did so, he added his own initials, "P. G.," to such signatures.

Plaintiff's husband died in 1916. She went to California after her husband's death, not intending to return until after the insurance would expire, February 16, 1917. She requested Gengler to renew the insurance and to get the premium payment therefor at her banker's in Cawker City. Accordingly, when the policy was about to mature, Gengler prepared an application for renewal of the insurance and signed it:

"Signed in the presence of        MRS. GRACE L. SNYDER, Applicant
    PETER GENGLER, *Agent*                    By P. G.
                                       R. W. SNYDER EST"

On this application, the defendant, as usual, renewed the insurance for the year ending February 16, 1918.

In the autumn of 1917 plaintiff told the agent she was going

away from her home in Cawker City and would like to remove her household goods to a building down town. Gengler assured her that she could do so and that he would arrange the transfer. She removed some of her goods accordingly, but part of them remained in plaintiff's home.

On January 10, 1918, the defendant wrote to plaintiff:

"*Mrs. Grace L. Snyder, Cawker City, Kansas.* . . .

"Policy No. 25330 held by you in this company expires on the 16 day of Feb. 1918. We shall be pleased to have a renewal from you.

"Mr. Peter Gengler of Cawker City, Kans. is our agent in your vicinity, whom we have instructed to call on you, but should he fail to do so before your policy expires, notify this office, and we will forward to you the proper blank, which you can fill out and send in to the company, thus keeping your insurance in force. . . .

"We thank you most cordially for your loyal support and business patronage in the past, and trust that the treatment accorded you during your connection with the company has been such as to merit a continuation of both your confidence and your patronage. . . .

> "THE FARMERS ALLIANCE INSURANCE CO.
> "C. F. MINGENBACK, *Sec'y.*"

On February 11, plaintiff wrote to Gengler:

"FRIEND PETE—

"I believe my insurance expires Feb. 16.

"I am inclosing check for $12.00 and if you show this letter to John McClun, he will pay the balance as I do not know how much to send. Think I still have a few dollars in F. & M. Bank.

"I hope your health is improving and that you will decide to buy my Cawker home.

"Regards to the folks. Send the policy to Mrs. Clarence F. Drake, Mankato, Kansas. Yours sincerely, GRACE L. SNYDER.

"438 S. 5th St., Salina, Kans., Feb. 11, '18."

Gengler received this check, but owing to a stroke of paralysis he was unable to attend to business, and he indorsed it to one J. H. King of Cawker City, another insurance agent, with the request that the latter procure insurance on plaintiff's goods. King was plaintiff's agent for the sale of her Cawker City home, and he wrote a special-delivery letter to the plaintiff, who was then in Salina. She received it at 1:30 p. m. on Saturday, February 16. Her insurance policy issued by defendant had expired at noon that day. Plaintiff was reluctant to tell what were the contents of the letter because of some private matters it contained, and it was not produced; but she admitted that it informed her that Gengler had turned over

the check to King and that Gengler had requested him to write insurance on the property. It also apprised her that the defendant had not renewed the insurance, and that consequently she had no insurance. Plaintiff took no step to procure other insurance; King did not cash the check indorsed to him by Gengler; and in some manner it came back to her and her attorneys. On the following Monday the goods which she had placed in the building down town were burned.

To plaintiff's demand for payment of insurance under the circumstances narrated above, defendant denied liability. She sued and got judgment, and defendant appeals.

A number of interesting questions under the assignment of error is presented, but these may not require discussion in detail. There was no insurance on the property at the time the goods were burned. Was that in any degree the fault of the defendant? Of course the company itself was guilty of no fault unless it is chargeable therewith because Gengler was its agent. It issued no renewal policy of insurance on the goods. It reminded the plaintiff on January 10, 1918, that her policy would expire on February 16, 1918, and that it would be pleased to renew it. It advised her that it had instructed its agent in her vicinity to call on her,—"but should he fail to do so before your policy expires, notify this office, and we will forward to you the proper blank, which you can fill out and send in to the company, thus keeping your insurance in force."

The agent Gengler had been stricken with paralysis and did not call her. She was advised to some extent, at least, of his indisposition; in her letter to him she expressed the hope that his health was improving. Gengler could not attend to the matter for her; but, although incapacitated he was carried to King's office and managed with his left hand to indorse the check, and made the request that King provide the desired insurance. While King did not do so, he let the plaintiff know of the circumstances within an hour and a half after the insurance expired, and a day and a half before the goods were burned. It was, in our judgment, the duty of plaintiff, in ordinary prudence, to procure insurance at once. She was in Salina when she learned her insurance had expired, within easy telegraph and telephone communication with the de-

Snyder v. Insurance Co.

fendant's headquarters in McPherson; she could have communicated the same way with King in Cawker City; or, doubtless, she could have procured insurance on her property from an agency in Salina. At all events, she did nothing, knowing that Gengler had not renewed it pursuant to her letter of February 11, and knowing that she was without insurance.

Of course, this is not altogether a one-sided controversy; and counsel for plaintiff make a plausible case for her. Gengler was an old and trusted friend of plaintiff. In former years he had attended to the matter of renewals for herself and her husband, even to the extent of supplying the details to be filled into their applications for insurance, and had signed their names to such applications. But in January preceding the expiration of the last renewal he was stricken with a grievous malady which paralyzed half his body and his right arm, and he was no longer able to attend to business. That he made some effort to continue to oblige his friend, the plaintiff, by doing in part those favors he was formerly accustomed to do, and tried to get another insurance man to furnish plaintiff with insurance protection, and turned over to him the plaintiff's check, does not in our judgment constitute a binding obligation against the defendant. It is needless to consider whether Gengler was a mere soliciting agent or general agent of the defendant. Gengler made no contract with plaintiff for renewal pursuant to her letter to him. When he arose from his sick bed and was carried to King's office and made some effort to get King to insure the goods, he certainly was not acting as agent, either general or special, for the defendant company.

This case is not like one where the patron of an insurance company, having solicited insurance and having been assured that it would be provided, suffers a loss when he has been led to believe that his application for insurance had been granted. In this case, plaintiff knew her application had not been granted, and that she had no insurance. Having none, through no fault lawfully attributable to defendant, she has no claim on the Farmers' Alliance Insurance Company for her fire loss.

The judgment is reversed, and the cause remanded with instructions to enter judgment for defendant.